IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DELAWARE VALLEY HOME** | : | **CIVIL ACTION** |
| **EVALUATIONS, INC.,** t/a **HOUSEMASTER** | : | |
| **OF DELAWARE VALLEY**, by Peter and | : | |
| Valerie Bradley, shareholders, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HOUSEMASTER OF AMERICA, INC.** | : | **NO. 07-3080** |

**MEMORANDUM**

**Padova, J.**                                                                                                                    **June 4, 2008**

This is an action for breach of contract and for bad faith by an insurance carrier, pursuant to

Pennsylvania's Unfair Insurance Practices Act, 40 Pa. Stat. Ann. §§ 1171.1–1171.15 (West 1992)

("UIPA") and 42 Pa. Cons. Stat. Ann. § 8371 (West 1990), brought by franchisee Delaware Valley

Home Evaluations ("Plaintiff")[1] against its franchisor, Housemaster of America ("Defendant").

Before the Court is Defendant's motion for summary judgment.[2]  For the reasons which follow, the

Motion is granted.

I.          FACTUAL BACKGROUND

           A.          The Franchise Agreements

There are four separate Franchise Agreements between Peter and Valerie Bradley and

_____

[1]The Complaint refers to both Delaware Valley Home Evaluations and Peter and Valerie
Bradley as plaintiffs. (See Compl. ¶¶2, 26.) However, the caption lists only Delaware Valley Home
Evaluations as the plaintiff. (See Compl.) Moreover, the Complaint alleges that Peter and Valerie
Bradley assigned their rights and license under the Franchise Agreements to Delaware Valley Home
Evaluations. (See Compl. ¶ 17.)   Consequently, we conclude that Delaware Valley Home
Evaluations is the sole plaintiff in this action.

[2]Although Defendant's motion for summary judgment was submitted on April 3, 2008, as
of today's date, Plaintiff has failed to respond.

Defendant[3] for the following geographical areas: (1) Montgomery County, Pennsylvania (Def. Ex. A ¶ 1.A.1); (2) Delaware and Chester Counties, Pennsylvania and New Castle County, Delaware (Def. Ex. B ¶ 1.A.1); (3) Camden County, New Jersey (Def. Ex. C ¶ 1.A.1); and (4) Gloucester County, New Jersey (Def. Ex. D ¶ 1.A.1).  Each of these Franchise Agreements are identical except for the effective dates and the specified geographic territories.  (Def. Ex. A-D.)  The agreements for Montgomery County and for Delaware, Chester, and New Castle Counties expired November 11, 1990 (Def. Ex. A ¶ 1.B; Ex. B ¶ 1.B).  The one for Camden County expired December 21, 1992 (Def. Ex. C ¶ 1.B), and the one for Gloucester County on December 30, 1992 (Def. Ex. D. ¶ 1.B).

Each agreement licensed Peter and Valerie Bradley "[t]o use Licensor's proprietary names, marks, and methods licensed hereunder only in the above described geographical area (except with Licensor's advance written consent), and only in the manner prescribed by this Agreement, and only for so long as this Agreement shall remain in effect and Licensee is in compliance with its terms . . . ."  (Def. Ex. A-D ¶ 1.A.3.)  Moreover, the assignability of the rights and license under each franchise agreement was severely limited, the grant of each was "personal in nature to the Licensee who is a party to this Agreement.  Licensee hereby agrees not to sell, assign, transfer, convey, or encumber this Agreement or any right or interest therein or thereunder . . . without the prior consent of Licensor."  (Def. Ex. A-D ¶ IX.A.)

---

[3]Peter and Valerie Bradley claim that they were associated in the franchise licensing with Michael and Barbara Bradley.  Michael and Barbara Bradley had two separate Franchise Agreements with Defendant.  The first granted a license in Bucks County, Pennsylvania from March 3, 1983 to March 2, 1993.  (Def. Ex. F ¶¶ 1.A.1, 1.B.)  The second covered Burlington County, New Jersey from March 12, 1984 to March 11, 1994.  (Def. Ex. E ¶¶ 1.A.1, 1.B.)  The relevant paragraphs of these agreements are identical to those between Peter and Valerie Bradley and Defendant. Consequently, neither the existence of these agreements nor the alleged association with Michael and Barbara Bradley alters our analysis of Defendant's Motion.

With regards to possible liability arising out of or relating to the operation of the franchise, the Franchise Agreements specifically provide that "Licensee alone shall be responsible for all loss or damage . . . Licensee agrees to indemnify and hold Licensor harmless against and from any and all such claims, loss, and damages, including costs and reasonable attorney fees." (Def. Ex. A-D ¶ V.C.)  All licensees were required to "obtain and at all times during the term of this Agreement maintain in force and pay the premium for errors and omissions (E&O) insurance . . . ."  (Id.) Defendant agreed  to "[d]evelop, and when available, offer to Licensee group insurance programs . . . ."  (Def. Ex. A-D ¶ IV.B.7.)

Peter and Valerie Bradley own the corporate shares of Plaintiff, and are its President and Secretary.  (Compl. ¶ 17.)  Peter and Valerie Bradley claim to have assigned their rights and license under the Franchise Agreements with Defendant to Plaintiff. (Id.)

B.      The Waldman Litigation

In March of 1991, Scott and Deborah Waldman hired Plaintiff to do a home inspection on a property in Montgomery County.  (Compl. ¶ 6.)  Seven years later, on December 8, 2000, the Waldmans filed a complaint against both Plaintiff and Defendant in the Court of Common Pleas of Montgomery County, Pennsylvania. (Compl. ¶ 5.) The Waldmans claimed that the home inspection failed to inform them that the property had private instead of public sewage.  (Compl. ¶ 7.)  They also claimed that they relied upon Plaintiff's assertions that it was associated with Defendant. (Compl. ¶ 6.)

Notice of the suit filed by the Waldmans was provided by Plaintiff to Defendant.  (Compl. ¶ 10.)  Defendant contacted its insurance carrier and engaged the law firm of Reger & Rizzo to defend the claim.  (Compl. ¶ 11.)  Reger & Rizzo entered an appearance on behalf of both Plaintiff

and Defendant (Compl. ¶ 13), but Plaintiff also procured separate counsel, namely Dennis M. Nolan, Esq. (Compl. ¶ 11). Mr. Nolan developed a terminal illness and died before filing preliminary objections. (Compl. ¶ 12.)

On January 31, 2001, Reger & Rizzo withdrew its appearance on behalf of Plaintiff. (Def. Ex. G at Entry 14.) In a letter dated February 21, 2001, Reger & Rizzo informed the Waldmans that Peter and Valerie Bradley's franchise agreement with HMA for Montgomery County expired on November 11, 1990, prior to the Plaintiff's inspection of the Waldman property. (Compl. Ex.) Explaining that Plaintiff was not a franchise of Defendant at the time of the alleged injury, Defendant requested that the Waldmans voluntarily dismiss it from their lawsuit. (Id.) In response to that letter, the Waldmans filed an amended complaint voluntarily dismissing Defendant, and adding Peter and Valerie Bradley as defendants. (Compl. ¶ 19.) Moreover, the amended complaint asserted a claim against Peter and Valerie Bradley under the Pennsylvania Consumer Protection Act ("PCPA") for falsely asserting an affiliation with Defendant. (Compl. ¶18.)

The Waldmans were later granted partial summary judgment on their PCPA claim. (Compl. ¶ 19.) The letter from Reger & Rizzo was attached as an exhibit to the judgment, establishing a per se violation of the PCPA. (Compl. ¶ 19.) The Complaint alleges that Valerie and Peter Bradley spent $80,000.00 defending the Waldman suit, as well as $30,000.00 for an appeal bond that they may not recover. (Compl. ¶¶ 26-28.)

Plaintiff claims that the letter from Reger & Rizzo was deceptive because, at the time of the alleged faulty inspection of the Waldman property, there were multiple franchise agreements between Peter and Valerie Bradley and Defendant that were still active. (Compl. ¶ 17.) Plaintiff also alleges that it only discovered the content of that letter in March of 2007. (Compl. ¶ 24.) Plaintiff

claims Defendant breached the Franchise Agreements by making a false assertion that there was no franchise in effect (Compl. ¶ 21) and by failing to defend Plaintiff in the Waldman lawsuit (Compl. ¶¶ 26-28).   Plaintiff also claims that Defendant owed it a duty of care to protect it, as well as to provide it with a notice of denial of insurance coverage and defense.  (Compl. ¶ 31.)  Finally, Plaintiff alleges that the Reger & Rizzo letter was an act of bad faith by an insurer while dealing with an insured.  (Compl. ¶¶ 38-41.)

        C.        <u>Mutual Release and Settlement</u>

In March of 2004, a prior action between Peter and Valerie Bradley and Defendant resulted in a mutual release and settlement.  The Settlement Agreement was entered into by Peter and Valerie Bradley, Michael Bradley, and the estate of Barbara Bradley, as well as Defendant and the American Arbitration Association.  The Settlement Agreement expressly released any claims Peter and Valerie Bradley might have against Defendant pertaining to each of the six Franchise Agreements listed above:

> For and in consideration of the foregoing settlement amounts and other good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound, Plaintiffs, and their officers, directors, employees, agents, administrators, related entities, parents, subsidiaries, affiliates, predecessors, successors and assigns do hereby release, acquit and forever discharge HouseMaster and AAA, and their officers, directors, employees, agents, administrators, predecessors, successors, and assigns, of and from any and all manner of action or actions, cause or causes of action, in law or in equity, whether foreseen or unforeseen, mature or unmatured, known or unknown, accrued or not accrued, direct or indirect, suits, debts, claims, losses, damages, judgments, defaults, covenants, contracts, controversies, agreements, promises, attorneys' fees, costs, interest payments and expenses, liabilities, obligations and demands of any kind whatsoever, which Plaintiffs ever had, now have, or hereafter can, shall or may have against Housemaster and AAA arising out of or in anyway relating to the Franchise Agreements or any other issue between the parties, whether such claims were or could have been brought in the Federal Court Action, AAA Proceedings or any other forum, from the beginning of the world to the date of this Agreement.

(Def. Ex. J ¶ 2.)  The Settlement Agreement also contained an acknowledgment by the parties that

"they enter into this Agreement with the advice and consent of their respective attorneys and that it

does so knowingly, voluntarily and intelligently, with a complete understanding of the terms and

conditions hereof."  (Def. Ex. J ¶ 7.)

II.     LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ.

P. 56(c).  The moving party "bears the initial responsibility of informing the district court of the basis

for its motion, and identifying those portions of [the record] . . . which it believes demonstrate an

absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must go beyond the pleadings and

set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  "The

mere existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no genuine issue

of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is "material"

if it may affect the outcome of the matter pursuant to the underlying law.  Id.  An issue is "genuine"

if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

III.    DISCUSSION

Defendant argues that it is entitled to summary judgment on both counts of Plaintiff's

complaint because Plaintiff has not shown that Defendant breached a duty imposed under a contract

with Plaintiff; and Plaintiff cannot establish that Defendant is an insurer with whom Plaintiff has an

insurance policy.

      A      <u>Breach of Contract</u>

Jurisdiction in this case is predicated upon 28 U.S.C. § 1332(a)(1), and is based upon diversity of citizenship.  (Compl. ¶ 1.)  Consequently, we must first determine which state's law applies.  Since the Franchise Agreements at issue cover Pennsylvania, Delaware and New Jersey, we must determine which state's law governs our analysis of those contracts.  We must first apply the choice of law principles of Pennsylvania, the forum state, to determine what law governs this dispute.  <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496-7 (1941).[4]

When conducting a choice of law analysis,"the first question to be answered...is whether the parties explicitly or implicitly have chosen a relevant law."  <u>Assicurazioni Generali, S.P.A. v. Clover</u>, 195 F.3d 161, 164 (3d Cir. 1999).  Under Pennsylvania law, "choice of law provisions in contracts will generally be given effect."  <u>In re Allegheny Intern.</u>, 954 F.2d 167, 178 (3d Cir. 1992) (quoting <u>Smith v. Commonwealth Nat'l Bank</u>, 557 A.2d 775, 777 (Pa. Super. Ct. 1989)).  However, a choice of law contract clause may be invalidated if (1) the chosen state has no substantial relationship to the parties or to the transaction and there is no other reasonable basis for the parties' choice, or (2) if application of the law of the chosen state would be contrary to a fundamental policy of a state with a materially greater interest than the chosen state in the determination of the particular issue.  <u>Kruzits v. Okuma Mach. Tool, Inc.</u>, 40 F.3d 52, 55 (3d Cir. 1994) (citing <u>Shifano v. Schifano</u>, 471 A.2d 839, 849 (Pa. Super. Ct. 1984)).

---

[4]As choice of law analysis is issue-specific,"different states' laws may apply to different issues in a single case." <u>Berg Chilling Systems, Inc. v. Hull Corp.</u>, 435 F.3d 455, 462 (3d Cir. 2006). Therefore, we will conduct a separate choice of law analysis for Plaintiff's contract and insurance bad faith claims.

The Franchise Agreements each provide that "This Agreement shall be interpreted under the laws of the state of New Jersey . . . ." (Def. Ex. A-D ¶ XIV.H.)  Moreover, New Jersey has a substantial relationship to both the parties and the transaction.  Defendant is a New Jersey corporation with its principal place of business in New Jersey. (Compl. ¶ 3.)  One of the Franchise Agreements from which this suit arises pertains to Camden County, New Jersey, and one pertains to Gloucester County, New Jersey.  (Def. Ex. C-D.)  Finally, the application of New Jersey law is not contrary to any fundamental policy of Pennsylvania.  As Plaintiff's breach of contract claim arises from the Franchise Agreements, we conclude that this claim should be governed by New Jersey law.  To prevail on a claim for breach of contract under New Jersey law, Plaintiff must prove that:  (1) a contract existed between the parties; (2) Defendant breached a duty imposed by said contract; (3) Plaintiff performed its obligations under the contract; and (4) Plaintiff was damaged as a result of the breach.  Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 275 F.Supp.2d 543, 566 (D.N.J. 2003).

Plaintiff was not a party to the Franchise Agreements.  Although provisions of the Franchise Agreements do not allow the assignment of the rights thereunder (see Def. Ex. A-D ¶ IX.A.), "contractual provisions prohibiting or limiting assignments operate only to limit the parties' right to assign the contract, but not their power to assign."  Owen v. CNA Insurance/Continental Cas. Co., 771 A.2d 1208, 1218 (N.J. 2001).  Consequently, the non-assignment provision of the Franchise Agreements is "interpreted merely as a covenant not to assign, the breach of which renders the assigning party liable in damages.  The assignment, however, remains valid and enforceable."  Id.  As the Complaint alleges that Peter and Valerie Bradley assigned their interests in the Franchise Agreements to Plaintiff (Compl. ¶ 17), and Defendant does not contest the assignment of these

Franchise Agreements, we treat the Franchise Agreements as having been validly assigned to Plaintiff.

Although it is not entirely clear, the Complaint appears to allege that the following actions by Defendant during the Waldman litigation breached the Franchise Agreements:  (1) sending the letter to the Waldmans denying a franchise relationship (Compl. ¶ 24); (2) failing to indemnify Plaintiff and pay for its legal defense (Compl. ¶¶ 26-28, 32); and (3) failing to notify Plaintiff of the same (Compl. ¶31).  The Complaint also appears to assert a violation of a contractual duty of care to protect Plaintiff.  Plaintiff has, however, failed to identify any clause of the Franchise Agreements prohibiting Defendant's actions.  It is clear from the record that the Franchise Agreement pertaining to Montgomery County expired on November 11, 1990, precisely as stated in the February 21, 2001 Reger & Rizzo letter.  (Def. Ex. A ¶ 1.B.)  Thus, at the time of Plaintiff's inspection of the Waldman's Montgomery County property, Plaintiff had no right to assert an affiliation with Defendant in Montgomery County.  Given the geographical limitations of the Franchise Agreements (see Def. Ex. A-D ¶ 1.A.3), those not pertaining to Montgomery County were irrelevant to the Waldman litigation.  Thus, not only is there nothing in the Franchise Agreements prohibiting Defendant from sending the letter, its contents were true.  Hence, we find that Reger & Rizzo's February 21, 2001 letter, sent on Defendant's behalf, did not breach the Franchise Agreements.

Furthermore, no provision of the Franchise Agreements obligated Defendant to either indemnify Plaintiff or pay for its legal defense.  In fact, the Franchise Agreements expressly provide the opposite, stating that the franchisee assumes total responsibility for any losses or damage "arising out of the acts or omissions of Licensee . . . ."  (Def. Ex. A-D ¶ V.C.)  Moreover, the franchisee promises to hold Defendant harmless, indemnify Defendant, and pay for any legal expenses.  (Id.)

As the Franchise Agreements did not impose a duty upon Defendant to either indemnify Plaintiff or to pay for its legal defense, we find that Defendant did not breach the Franchise Agreements by failing to do so.  Moreover, no provision of the Franchise Agreements required Defendant to inform Plaintiff that Defendant would not indemnify it or pay for its legal defense.  Hence, we find that Defendant's failure to inform Plaintiff of the same did not breach the Franchise Agreements.

Finally, Plaintiff's assertion of a duty to protect seems to arise out of the assumption that the Franchise Agreements constitute a type of insurance policy.  As discussed infra, see Section III.B., the Franchise Agreements are not insurance policies.  Plaintiff does not argue, nor can we find, any other basis for this alleged duty to protect.  As the contents of Reger & Rizzo's February 21, 2001 letter were true, Plaintiff could not even argue that the letter is in violation of any implied covenant of good faith and fair dealing arising from the Franchise Agreements.  Under New Jersey law, all contracts have an implied covenant that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997) (citation omitted).  Here, as the Franchise Agreement for Montgomery County had expired, Plaintiff had no right to continue receiving the fruits of that contract.  Consequently, we conclude that Defendant's alleged failure to protect Plaintiff did not breach any duty imposed on Defendant by the Franchise Agreements.

As Plaintiff has failed to establish that Defendant breached any duty imposed by the Franchise Agreements, we find there are no genuine issues of material fact with respect to Plaintiff's breach of contract claim and that Defendant is entitled to the entry of summary judgment in its favor on this claim.

10

B.      Bad Faith by an Insurance Carrier

Plaintiff's also asserts a claim against Defendant under the UIPA and 42 Pa. Cons. Stat. Ann. § 8371, for bad faith by an insurance carrier.  Defendant did not object to the application of Pennsylvania law with respect to this claim, so any potential choice of law issues presented by this claim are waived.  See Neely v. Club Med Management Services, Inc., 63 F.3d 166, 180 n.10 (3d Cir. 1995).   Defendant opposes this claim on the grounds that there is no private right of action under the UIPA and that it is not an insurance carrier.

We agree that there is no private right of action under the UIPA.  Sabo v. Metropolitan Life Ins. Co., 137 F.3d 185, 192 (3d Cir. 1998) ("By judicial precedent, the Pennsylvania Insurance Commission alone may seek to enforce the UIPA." (citing Wright v. N. Am. Life Assurance Co., 539 A.2d 434, 438 (Pa. Super. Ct. 1988))); Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1232 (Pa. Super. Ct. 1994).  Moreover, Pennsylvania's insurance bad faith statute only applies to actions "arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured . . . ."  42 Pa. Cons. Stat. Ann. § 8371.  Consequently, Plaintiff cannot succeed on a claim against Defendant for bad faith unless Defendant is an insurance company that issued an insurance policy to Plaintiff.

The Commonwealth Court of Pennsylvania defined the term insurer for purposes of this statute as "any person who is doing, has done, purports to do, or is licensed to do an insurance business . . . ."  Se. Pa. Transp. Auth. v. Holmes, 835 A.2d 851, 856 (Pa. Commw. Ct. 2003) (quoting Pa. Stat. Ann. § 221.3).  An insurer can also be defined as the "'underwriter or insurance company with whom a contract of insurance is made.  The one who assumes risk or underwrites a policy, or the underwriter or company with whom a contract of insurance is made.'"  See id. at 857

11

n. 18 (quoting Black's Law Dictionary 808 (6th ed. 1990)).  A policy of insurance is "'an instrument

in writing, by which one party (insurer), in consideration of a premium engages to indemnify another

(insured) against a contingent loss.'"  Id. at 857 (quoting Black's Law Dictionary 1157 (6th ed.

1990)).

Defendant argues that it cannot be liable to Plaintiff for insurance bad faith because it is

neither an insurance company nor has it ever issued a policy of insurance to Plaintiff.  Plaintiff has

failed to produce any evidence to the contrary.  The Franchise Agreements themselves are clearly

not policies of insurance, as they contain no mention of premiums to be paid by Plaintiff or by Peter

and Valerie Bradley, and because they plainly allocate all risk of liability to the franchisees.  (Def.

Ex. A-D ¶ V.C.)  The Franchise Agreements contain no provision requiring Defendant to assume

the risk of liability or promise to pay for the same.  Finally, the Franchise Agreements require

franchisees to obtain and maintain liability insurance.  (Id.)  Such a provision would be unnecessary

if, by signing the Franchise Agreements, such insurance was achieved.

Defendant admits that it has negotiated volume-based premium structures for group error and

omission policies, but asserts that its involvement was limited to such negotiation as well as

consolidating payments from various franchisees for joint submission.  (Def.'s Br. at 15.)  Plaintiff

has failed to produce any evidence indicating otherwise and thus has failed to create a genuine issue

of material fact with respect to this issue.  We conclude that Defendant is not an insurer and the

Franchise Agreements are not insurance policies.  Thus, we find that Defendant is entitled to the

entry of summary judgment in its favor with respect to Plaintiff's claim of bad faith by an insurance

carrier.[5]

An appropriate order follows.

---

[5]Defendant also argues that Plaintiff's claims are barred by the March 2004 Settlement Agreement.  As we already found that Defendant is entitled to the entry of summary judgment in its favor on both of Plaintiff's claim on other grounds, we need not reach this issue.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DELAWARE VALLEY HOME** | : | **CIVIL ACTION** |
| **EVALUATIONS, INC.,** t/a **HOUSEMASTER** | : | |
| **OF DELAWARE VALLEY**, by Peter and | : | |
| Valerie Bradley, shareholders, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HOUSEMASTER OF AMERICA, INC.** | : | **NO. 07-3080** |

### ORDER

          **AND NOW,** this 4th day of June, 2008, in consideration of Defendant's Motion for

Summary Judgment (Docket No. 14), **IT IS HEREBY ORDERED** that the Motion is **GRANTED**

pursuant to Federal Rule of Civil Procedure 56 and **JUDGMENT** is entered in favor of Defendant

and against Plaintiffs.  Furthermore, Plaintiff's Motion to Compel (Docket No. 17) is **DENIED AS**

**MOOT**.

                              BY THE COURT:


                              S/John R. Padova

                              _____

                              John R. Padova, J.